FILED 26 OCT '11 13:43 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BILLY E. BROWN,                           Case No.  3:10-cv-1457-MA

               Plaintiff,                OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

DAVID B. LOWRY
9900 SW Greenburg Road
Columbia Business Center, Suite 130
Portland, OR 97223

      Attorney for Plaintiff

ADRIAN L. BROWN
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

KATHY REIF
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Billy E. Brown brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income on January 1, 2005, alleging disability beginning June 1, 2000. After conducting two hearings, an administrative law judge (ALJ) denied benefits in a decision dated January 30, 2007. The Appeals Council denied review. On appeal to the United States District Court, the parties stipulated to a remand, and the Appeals Council issued an order of remand on October 23, 2008. Pursuant to the remand order, the ALJ was to update the medical record, reevaluate lay testimony, further evaluate plaintiff's testimony, reconsider plaintiff's residual functional capacity, and obtain additional vocational evidence as necessary. Plaintiff filed a subsequent application for supplemental security income on May 21, 2008, which was combined with plaintiff's prior application on remand.

On June 18, 2010, an ALJ conducted another hearing at which plaintiff testified, as did his mother Donna Cleveland, and Vocational Expert Paul Morrison. Plaintiff submitted additional evidence. On September 22, 2010, the ALJ issued an unfavorable decision, and is the final decision of the Commissioner for purposes of the court's review. 20 C.F.R. § 416.1484(a).

## FACTUAL BACKGROUND

Plaintiff was born in 1960 and was 49 years old on the date of the hearing on June 18, 2010. Plaintiff completed 11 years of school, obtained a GED in 2005, and undertook some computer training while in prison. Plaintiff has a sporadic work history, and was last employed briefly as a telemarketer in 2000. Plaintiff lives with his grandmother and son, and reports being assisted by his mother.

Plaintiff has had numerous periods of incarceration. Plaintiff testified at the June 18, 2010 hearing that he has spent approximately seven years in prison for felony convictions including forgery, identity theft, and drug possession. Plaintiff also testified he has three convictions for DUI, occurring in 1994, 2006, and 2009, which have included jail time.

Plaintiff was diagnosed as HIV positive and with hepatitis C while in prison in 2002. Plaintiff has a long history of alcohol and drug abuse, including cocaine, heroin, and methamphetamine use. Plaintiff states that he stopped using illegal drugs in 2000, and

has only used alcohol two or three times since 2005. Plaintiff alleges disability based on a Human Immunodeficiency Virus (HIV) infection, hepatitis C, degenerative disk disease with scoliosis, substance abuse, fatigue, left shoulder tendonitis, and heel pain.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform. Yuckert, 482 U.S. at 141-42.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since January 5, 2005, the application date. See 20 C.F.R. §§ 416.920(b), 416.971 et seq.

At step two, the ALJ found that plaintiff had the following medically determinable severe impairments: an HIV infection; hepatits C; lumbar degenerative disc disease; and drug and alcohol abuse. See 20 C.F.R. § 416.920(c).

At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically

equals a listed impairment.  See 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to lift and carry twenty pounds occasionally and ten pounds frequently; that during an eight hour day, plaintiff can stand and walk for six hours and sit for six hours; and that he is limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling.  See 20 C.F.R. §§ 416.927, 416.929.

At step four, the ALJ found that plaintiff is unable to perform any past relevant work.  See 20 C.F.R. § 416.965.

At step five, the ALJ found that considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  See 20 C.F.R. §§ 416.969, 416.969(a).  Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff contends that the ALJ made several errors:  (1) improperly discrediting his testimony; (2) improperly discrediting the opinion of Mary O'Hearn, M.D., his treating physician; (3) improperly discrediting the lay witness testimony; and (4) failing to demonstrate that plaintiff retains the ability to perform other work in the national economy at step five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Valentine v. Comm'r Soc. Security Admin., 574 F.3d 685, 690 (9th Cir. 2009). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Comm'r of Soc. Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

## DISCUSSION

### I.   Plaintiff's Credibility.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first

6 - OPINION AND ORDER

stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle v. Comm'r Soc. Security Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

At the December 11, 2006 hearing, plaintiff testified that due to problems with his back, he is unable to lift things, and needs

to change positions every 15 minutes. Plaintiff stated that his prison duty was limited because of his back problems and that he just watches television. Plaintiff testified that due to bone spurs in his heels, he can walk three blocks before needing a break, and can stand for 20 minutes before needing a break.

Plaintiff also stated that he had a serious head injury with a brief loss of consciousness in 1998, which cause headaches, restless leg syndrome, panic attacks, seizures, and numbness in his face. Plaintiff testified that he gets headaches three times a week, requiring him to lay down for half the day, and that he suffers panic attacks once per month. Plaintiff stated that he suffers leg cramps which interfere with his sleep for ten to 20 minutes each time. Plaintiff stated that arthritis in his hands causes him to drop items every few days, and that he has crying spells once per month which can last for several hours.

Plaintiff further testified that he was diagnosed with hepatitis C in 2000, which causes chronic nausea and daily vomiting. Plaintiff also stated that he has AIDS and that his medications cause him daily seizures, insomnia, nightmares, weight loss, and frequent diarrhea. Plaintiff stated that he can spend up to an hour in the bathroom each day, sometimes with only 30 seconds notice. Plaintiff testified that he suffers fatigue, causing him to nap for a couple of hours each day. Plaintiff estimated that on a good day, he could work for 45 minutes before needing a break,

and on a bad day only for 15 minutes.  According to plaintiff, he should not work on heavy equipment because his medications cause dizziness.  Plaintiff also stated that his knee pain prevents him from crawling or kneeling.

At the June 18, 2010 hearing, plaintiff testified that he is unable to work due to his scoliosis and degenerative disc disease, chronic nausea, daily vomiting, and daily diarrhea.  Plaintiff testified that since June 2000, he could lift 20 pounds occasionally, that he could stand for 30 to 40 minutes, and could sit for four hours, and is able to walk for 30 minutes.  Plaintiff testified that he has had several hospitalizations for panic attacks, vomiting blood, and seizures.  Plaintiff stated that he is on multiple medications for his HIV and hepatitis C which cause him nausea, vomiting, drowsiness, dizziness, seizures, insomnia, and diarrhea.  Plaintiff reported that his nausea and vomiting worsened with Interferon treatment for his hepatitis C.  Plaintiff testified that his medications are the best ones with the least side effects.

When asked about his alcohol consumption, plaintiff testified that he used to drink a six-pack per week, but is now a non-drinker, and that his last drink was in March 2009 when he was arrested for DUI.  Prior to that, plaintiff was last intoxicated in 2005, when he was arrested for DUI.  Plaintiff testified that he stopped using illegal drugs in 2000, but since 2004, uses medical marijuana daily for nausea.

Plaintiff also provided that since June of 2000 he has been able to dress and bathe himself, do the dishes, laundry, and occasional cooking, and helps his son with his homework and attends parent-teacher conferences. Plaintiff testified that he injured his back while shoveling in 2009, resulting in physical therapy. Plaintiff denies mowing the lawn any longer.

In the September 22, 2010 decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

Contrary to plaintiff's assertion, the ALJ provided numerous reasons, citing specific record evidence, which undermine plaintiff's subjective complaints. To begin, the ALJ found several inconsistencies between plaintiff's description of debilitating symptoms at the hearing and his medical record.[1] When the claimant's own medical record undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008); Morgan v. Comm'r Soc. Security Admin., 169 F.3d 595, 600 (9th Cir. 1999).

---

[1] I disagree with the ALJ's characterization of plaintiff's care as conservative, yet as detailed above, the ALJ identifies numerous inconsistencies supported by substantial evidence.

For example, the ALJ noted that plaintiff's allegations of debilitating nausea and diarrhea due to his HIV and hepatitis C are inconsistent with his medical records.    As the ALJ discussed, plaintiff's records from January of 2005 state that his HIV is under excellent control.    (Tr. 1062.)    Likewise, in June of 2010, Dr. O'Hearn states that "he remains stable on current antiviral therapy with fully suppressed virus and intact cellular immunity." (Tr. 1316.)

Additionally, the ALJ noted that despite plaintiff's current contention of unpredictable diarrhea interfering with his ability to work for at least an hour each day, plaintiff has had multiple visits with his physicians where he has denied complaints of diarrhea.    (Tr. 1018, 1051, 1005, 1001, 880, 884, Tr. 1314.)    As plaintiff correctly notes, a period without complaints is not entirely inconsistent with disability.    See Carlson v. Astrue, 682 F.Supp.2d 1156, 1166 (D.Or. 2010).    However, in this case, at the 2010 hearing, plaintiff complained of daily diarrhea.    Given the number of visits where plaintiff denied experiencing diarrhea, I conclude that the ALJ's determination to discredit plaintiff on this basis is supported by substantial evidence.    Moreover, as the ALJ correctly indicated, there is a complete absence of information in Dr. O'Hearn's treatment notes concerning plaintiff's allegations of monthly panic attacks and daily seizures.

The ALJ's conclusion that with the exception of a hospitalization for dizziness and vomiting in 2006, petitioner's hepatitis C has been under excellent control also is supported by substantial evidence. To be sure, the medical record reveals that plaintiff's most severe symptoms of vomiting and weight loss have been transitory and appear to coincide with Interferon treatment for his hepatitis C, treatment that his doctors stopped due to its side effects.

With respect to nausea, the court agrees with plaintiff that his nausea appears to be a chronic condition. Plaintiff is on anti-nausea medication and takes medical marijuana. However, the record also supports the ALJ's conclusion that his nausea is not as debilitating as plaintiff suggests. For example, on August 4, 2009, plaintiff reported chronic nausea, but on June 28, 2009, plaintiff denied any nausea. (Tr. 869, 884.) And, on June 16, 2010, just two days prior to the hearing, plaintiff informed Dr. O'Hearn that his nausea was much improved, contrary to plaintiff's hearing testimony two days later where he complained that his nausea causes him to lie down for two hours each day. Where the record supports the conclusion drawn by the ALJ, this court may not second-guess it. Parra, 481 F.3d at 746.

The ALJ also discredited plaintiff for five instances of noncompliance with his medication regimen. Having reviewed the records cited by the ALJ, I conclude that in two of those

instances, plaintiff discontinued his medications due to adverse side effects, and thus, the ALJ's conclusion is not supported by substantial evidence. (Tr. 1033, 1039.) In two other instances, plaintiff was unable to take his medications or follow treatment due to his incarceration. I also find those two instances of noncompliance are not supported by substantial evidence. (Tr. 1018, 878, 1390-92.)

With respect to the fifth instance of noncompliance, however, the ALJ's conclusion is supported by substantial evidence. There, the ALJ cites medical records from November 1990. (Tr. 616-22.) Those records reveal that plaintiff underwent surgery to remove anal warts while incarcerated. The records directly contradict plaintiff's self-reported medical history he provided to Dr. Taplitz in February of 2005, when plaintiff denied ever having anal warts. (Tr. 1057.) Although not an instance of noncompliance per se, I conclude that the ALJ could discount plaintiff's testimony based on this obvious contradiction.

Even if the ALJ should not have discredited plaintiff for a few instances of noncompliance with his medication regimen, any such error is harmless. With respect to the inconsistencies between plaintiff's medical record and his self-reported symptoms, the ALJ's remaining findings are supported by substantial evidence. And, as detailed below, the ALJ has identified numerous other

bases, backed by substantial evidence, for discrediting plaintiff. See Carmickle, 533 F.3d at 1162; Batson, 359 F.3d at 1197.

I conclude that the ALJ properly relied upon plaintiff's sporadic work history in assessing plaintiff's credibility. As the ALJ discussed in the decision, plaintiff has had long periods of incarceration, and has worked sporadically, even prior to his alleged disability onset date in 2000. (Tr. 788.) As the ALJ explained, plaintiff's work history reveals many years where plaintiff did not have any earnings whatsoever (i.e., 1989-90, 1992, 1994-1998), wholly supporting the ALJ's findings. (Tr. 60.) As the ALJ found, plaintiff's actual employment history is inconsistent with plaintiff's primary contention - that he is unable to work due to his alleged impairments. See Thomas, 278 F.3d at 959 (claimant's spotty work history was a valid credibility consideration); Goudge v. Astrue, 2010 WL 4007538, *3 (D.Or. Oct. 12, 2010) (discrediting claimant for sporadic work history).

Continuing, the ALJ discredited plaintiff based on his criminal history. Contrary to plaintiff's assertion, an ALJ may discredit a claimant based on convictions involving crimes of dishonesty. Goudge, 2010 WL 4007538 at * 3 (discrediting claimant based on convictions for drug possession, attempted drug manufacture, and identity theft); Albidrez v. Astrue, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) (ALJ properly discredited claimant based on prior felony convictions for robbery and showing false

identification); <u>Brown v. Astrue</u>, 2008 WL 4279401, *7 (E.D. Cal. Sept. 16, 2008)(discrediting claimant based on prior theft conviction).

In this case, the ALJ inquired of plaintiff's past convictions during the June 18, 2010 hearing. Plaintiff testified that he had multiple convictions for forgery and identity theft. Based on this evidence, the ALJ discredited plaintiff finding that such convictions "necessarily involve dishonesty and deception." The ALJ's findings are supported by substantial evidence, and the ALJ appropriately discredited plaintiff on this basis.

Additionally, the ALJ found that plaintiff's activities of daily living are inconsistent with the level of disability he is alleging. The ALJ noted that in 2005, plaintiff reported that he was able to care for himself without assistance, prepared meals for himself, performed normal household chores, used public transportation, shopped in stores, managed his finances, was able to read, watched television, attended support groups independently, and socialized with friends and family. The ALJ determined that this long list of abilities was inconsistent with his current claim of being incapacitated.

The ALJ specifically discredited plaintiff citing plaintiff's own testimony that he served as his father's primary caregiver for a period of time after his father suffered a stroke. At the June 18, 2010 hearing, plaintiff testified that several months earlier

he traveled to Arizona, moved his father to Oregon, settled his father into an apartment, and stayed with him for five days a week for a period of three months. (Tr. 1403.) Plaintiff reported that he cooked for his father, and took his father to appointments. The ALJ's findings are supported by substantial evidence.

I conclude that the ALJ could discredit plaintiff because his activities of daily living are inconsistent with his allegations disabling symptoms. See Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir. 2010)(inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

To summarize, even if the ALJ erred in discrediting plaintiff for a few instances of noncompliance, any such error is harmless. The remaining reasons supplied by the ALJ are supported by substantial evidence in the record. Because those remaining reasons, when taken together, still amount to clear and convincing evidence, the ALJ's adverse credibility determination must be sustained. See Carmickle, 533 F.3d at 1162; Batson, 359 F.3d at 1197.

## II. Physician's Opinion.

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted

by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Bayliss</u>, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. <u>Tommasetti</u>, 533 F.3d at 1041; <u>Carmickle</u>, 533 F.3d at 1164; <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. <u>Bray</u>, 554 F.3d at 1228; <u>Magallanes</u>, 881 F.2d at 751. An ALJ also may discount a physician's opinion that is based on a claimant's discredited subjective complaints. <u>Tommasetti</u>, 533 F.3d at 1040.

Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinion of Dr. O'Hearn simply because the opinion was contained in a questionnaire prepared by plaintiff's attorney. In the questionnaire, Dr. O'Hearn opined that plaintiff has been unable to work since 2003. According to plaintiff, Dr. O'Hearn did more than check-the-box by providing findings and objective signs in the questionnaire. Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for partially rejecting Dr. O'Hearn's opinion. I disagree.

The ALJ discounted Dr. O'Hearn's opinion contained in the questionnaire, offering, in part, the following rationale:

> In this case, Dr. O'Hearn merely completed a "fill-in-the-blanks" form and did not provide reasons based on objective evidence to substantiate her opinion or even explain how the claimant's impairments limited his ability to lift and carry, to sit, stand and walk, to perform postural or manipulative tasks or to fulfill the basic mental demands of competitive, remunerative, unskilled work. The difficulty with this type of attorney-created, goal directed, check-the-box, fill-in-the-blank form is that while signed by a treating medical source, it contains no real description of medical findings and is merely brief and conclusory in form. It is well established that in such a case the Administrative Law Judge may properly reject such a conclusory opinion. (citation omitted).

Contrary to plaintiff's suggestion, the ALJ did not reject Dr. O'Hearn's opinion solely because it was contained in the questionnaire created by plaintiff's attorney. In this case, the ALJ also detailed numerous inconsistencies between Dr. O'Hearn's opinion contained in the questionnaire and the doctor's own contemporary treatment notes.

For example, the ALJ discussed that Dr. O'Hearn's contemporary notes reflect that plaintiff's HIV and hepatitis C consistently have been well-controlled and stable, with low to non-existent viral loads. The ALJ noted that Dr. O'Hearn's progress notes reflected few, if any, objective findings concerning plaintiff's back impairment, and that his back pain was well-controlled with medication. Indeed, the progress notes cited by the ALJ include a comment by Dr. O'Hearn that plaintiff's back pain appears to be out of proportion with his skeletal abnormalities, and that he has responded well to physical therapy in the past. (Tr. 1317-1319.)

The ALJ also explained that Dr. O'Hearn's treatment notes describe plaintiff's depressive symptoms as stable with medication, yet the questionnaire indicates that his depression and anxiety negatively impacted plaintiff's physical condition.

Plaintiff asserts that the ALJ was required to give controlling weight to Dr. O'Hearn's opinion because it is consistent with information contained in the notations of other physicians. While I agree that plaintiff consistently has complained of chronic nausea and occasional vomiting (Tr. 658-59, 869, 881, 891, 1015, 1021), Dr. O'Hearn is the only physician to opine that plaintiff is unable to work due to his symptoms, and that opinion is contained *only* in the questionnaire discussed above. Furthermore, an ALJ may give a treating physician's opinion less weight if it based on a patient's subjective complaints where the ALJ finds a claimant less than credible. <u>Bray</u>, 554 F.3d at 1228. Where the record supports the findings made by the ALJ, it is not for this court to second-guess the ALJ's decision. <u>Batson</u>, 359 F.3d at 1193.

The court is mindful of the deference that his typically accorded treating physicians. <u>See Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007). However, where a treating physician's opinion of complete disability is undercut by the physician's own contemporary medical records, I conclude that the ALJ is not required to give that opinion controlling weight.

19 - OPINION AND ORDER

Based on these multiple inconsistencies, in combination with the context in which the questionnaire was produced, I conclude that the ALJ cited specific and legitimate reasons for discounting Dr. O'Hearn's opinion contained in the questionnaire. <u>Wise v. Astrue</u>, 2010 WL 4536788, *7 (D.Or. Nov. 1, 2010)(discounting treating physican's opinion contained in a letter prepared by plaintiff's attorney); <u>Orellana v. Astrue</u>, 2008 WL 398834, *12-13 (E.D. Cal. Feb. 12, 2008), <u>adopted by</u>, 2008 WL 659761 (E.D. Cal. Mar. 11, 2008)(rejecting an "opinion" of treating physician contained in a fill-in-the-blank form prepared by claimant's attorney); <u>accord</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001)(ALJ may discount opinion of treating physician if it is unsupported by objective evidence or record as a whole). Accordingly, I find that the ALJ adequately explained rejection of Dr. O'Hearn's opinion in the questionnaire in favor of the contemporary treatment notes. <u>See</u> <u>Crane v. Shalala</u>, 76 F.3d 251, 276 (9th Cir. 1996)(individualized medical reports are preferred to check-off reports); <u>accord</u> <u>Batson</u>, 359 F.3d at 1195.

Additionally, I note that plaintiff does not challenge the ALJ's treatment of the opinion of Donald D. Ramsthel, M.D., who conducted a consultative examination of plaintiff on May 7, 2005. As the ALJ found, Dr. Ramsthel opined that plaintiff could lift and carry 100 pounds occasionally and 40 pounds frequently. The ALJ noted that Dr. Ramsthel could sit without limit, and stand or walk

for up to two hours at a time in a six hour day.   (Tr. 655-59.)
Dr. Ramsthel noted that plaintiff had no other functional or
environmental limitations.   Plaintiff similarly does not challenge
the ALJ's analysis of an Oregon Department of Corrections opinion
which placed plaintiff on a four-month limitation to light work
with no repetitive abduction of the left shoulder, and that this
limitation was not continued.

Plaintiff also suggests that the ALJ should not have relied
upon the opinions Mary Westfall, M.D., and Richard Alley, M.D., two
non-examining physicians.   Dr. Westfall reviewed plaintiff's
medical records on August 15, 2005, and in a physical residual
functional capacity (RFC) assessment opined that plaintiff could
lift 20 pounds occasionally, 10 pounds frequently, and could stand,
walk or sit for six hours in and eight hour day, and thus could
perform a full range of light work.   (Tr. 673-680.)   Dr. Alley
reviewed plaintiff's medical records on July 22, 2008, and in an
RFC assessment opined that plaintiff could occasionally lift 20
pounds, frequently lift 10 pounds, could sit for six hours in an
eight hour day, but could stand or walk for a total of two hours in
an eight hour day.   Dr. Alley described that plaintiff is limited
to occasional climbing, balancing, stooping, kneeling, crouching
and crawling, thus opining that plaintiff can perform sedentary
work.   (Tr. 1109-1116.)

Plaintiff argues that the ALJ should not rely upon the opinions of Drs. Westfall and Alley because they are not supported by independent clinical findings. I disagree. Both Drs. Westfall and Alley stated that they reviewed the medical record, which contains the information from the Department of Corrections, as well as the opinion of Dr. Ramsthel. Based on my careful review of those opinions, it appears, at a minimum, that Dr. Westfall considered the full physical examination completed by Dr. Ramsthel, as Dr. Westfall specifically mentioned the moderate to heavy RFC. (Tr. 655-659, 680.) Thus, because the opinions of the non-examining physicians are supported by independent clinical findings, the ALJ did not err in considering them. See Orn, 495 F.3d at 632 (describing independent clinical findings as diagnoses offered by another physician and supported by substantial evidence).

In short, Dr. O'Hearn's opinion that plaintiff was unable to work was not uncontroverted, and the ALJ adequately detailed the facts and conflicting medical evidence and offered findings. Tommasetti, 533 F.3d at 1041. I find no error in the ALJ's treatment of the treating physician's opinion contained in the questionnaire provided by plaintiff's attorney.

## III. **Lay Testimony.**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which

the ALJ must take into account.   Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).   The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so.   Valentine, 574 F.3d at 694; Dodrill, 12 F.3d at 919.

In this case, plaintiff's primary contention is that the ALJ inappropriately discounted the testimony of Donna Cleveland, plaintiff's mother, based on their relationship and that she was motivated to assist plaintiff.   I disagree.

Plaintiff correctly notes that an ALJ may not discount lay testimony solely based on a close familial relationship between a claimant and the lay witness.   See Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009).   However, in this case, the ALJ offered multiple germane reasons for discounting the lay testimony.   For example, the ALJ specifically discounted Ms. Cleveland's testimony that plaintiff suffered episodes of daily crying, seizures, debilitating depression, and dizzy spells as being inconsistent with plaintiff's medical record.   As discussed above with respect to plaintiff's testimony, his medical record is devoid of complaints of daily seizures, and his depression was largely well-controlled.   In light of my conclusion that the ALJ provided clear and convincing reasons for rejecting plaintiff's subjective

complaints, and that Ms. Cleveland's testimony is similar to those complaints, it follows that the ALJ gave germane reasons for discounting her testimony. <u>Valentine</u>, 574 F.3d at 694; <u>see</u> <u>Bayliss</u>, 427 F.3d at 1218 (the ALJ may accept lay witness testimony that is consistent with the record relating to daily activities, and may reject portions of testimony that are inconsistent with the medical record and based on unreliable subjective complaints); <u>Lewis v. Apfel</u>, 236 F.3d 503, 511-12 (9th Cir. 2001)(same).

Additionally, the ALJ found that Ms. Cleveland's failure to note that plaintiff occasionally drives a car inconsistent with plaintiff's testimony that since his alleged onset date in 2000, he has driven approximately 10,000 miles, and inconsistent with his prior DUI conviction, about which his mother presumably was aware. (Tr. 725, 1404.)  Thus, the ALJ has supplied another germane reason for partially rejecting Ms. Cleveland's testimony.  <u>See</u> <u>Carmickle</u>, 533 F.3d at 1164 (ALJ may discredit lay testimony based on inconsistency with claimant's own testimony).

In the decision, the ALJ also identified which specific testimony from Ms. Cleveland the ALJ found credible.  For example, the ALJ partially credited Ms. Cleveland's 2005 third party report because it described plaintiff engaging in extensive activities of daily living:  caring for himself, preparing meals, performing household chores, walking, using public transit, managing his finances, and attending support groups independently.  The ALJ also

credited Ms. Cleveland's description of plaintiff tiring easily when mowing the lawn or working on his cars, but found these activities were beyond light exertion, and thus were not inconsistent with a light RFC. Accordingly, I conclude that the ALJ has provided multiple germane reasons, in addition to stating that Ms. Cleveland appeared motivated to assist her son, and that the ALJ did not err in discounting the lay testimony. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

The ALJ also discussed the testimony of Tina Ring, plaintiff's former girlfriend and mother of plaintiff's son. Ms. Ring testified that she observed plaintiff a few times a week from late December of 2005, following plaintiff's release from prison until June of 2006, when plaintiff was re-incarcerated. Ms. Ring testified at 2006 hearing that plaintiff had difficulty with his hands trembling, and that he was depressed, had crying spells, and appeared in pain 80 percent of the time. (Tr. 728-30, 741.) Ms. Ring testified that between December and June, she recalled plaintiff drinking on two occasions. Ms. Ring testified that plaintiff would tire easily when mowing the lawn, but that he did take their son fishing twice.

The ALJ discounted Ms. Ring's testimony because, like plaintiff's complaints, her description of plaintiff's symptoms is inconsistent with plaintiff's medical record and plaintiff's testimony. As mentioned above, where the ALJ has provided clear

and convincing evidence to discount a claimant's subjective complaints, and a lay witness describes similar complaints, the ALJ has provided a germane reason to discount Ms. Ring's testimony. Valentine, 574 F.3d at 694; see Bayliss, 427 F.3d at 1218. The ALJ also did not err in discounting Ms. Ring's testimony on the basis that the limitations she alleged were inconsistent with the activities she described plaintiff as doing (fishing, playing games with her son, household chores, and mowing the lawn). Carmickle, 533 F.3d at 1164. This reason is germane to Ms. Ring. I note that the ALJ found that Ms. Ring's testimony about plaintiff tiring while mowing the lawn was not inconsistent with light duty work.

In sum, I conclude that the ALJ has provided germane reasons for discounting the lay testimony, which are supported by substantial evidence in the record. Valentine, 574 F.3d at 694.

**IV.  Plaintiff Can Perform Other Work in the National Economy.**

Plaintiff complains that the Vocational Expert's (VE's) testimony fails to meet the Commissioner's step five burden. With respect to step five, plaintiff argues only that the ALJ erred by failing to discuss evidence from the United States Department of Labor, the United States Department of Commerce and the State of Oregon concerning the "lack of documentation for numbers of jobs by *DOT* [Dictionary of Occupational Titles] section at both the national and regional levels." (Plaintiff's Brief #15, p. 34.)(citing Tr. 262-68.) Plaintiff submitted a 2003 letter from

the U.S. Census Bureau stating that it does not rely upon the DOT codes, but instead relies upon the Standard Occupational Classification (SOC). Plaintiff also submitted additional letters ranging from 1997 to 2002 from other state and national agencies stating how those agencies calculate their employment numbers. (Tr. 262-68.) Plaintiff submits that the ALJ was required to discuss this significant probative evidence. I disagree.

Plaintiff's argument has been rejected previously. As aptly explained in Werthy v. Astrue, the DOT is recognized in the Social Security Regulations as a source of reliable job information. 2011 WL 4625663, *32 (D.Or. Sept. 2, 2011)(citing 20 C.F.R. § 404.1566), adopted by, 2011 WL 4625668 (D.Or. Oct. 3, 2011). Indeed, an ALJ is permitted to take administrative notice of reliable job information contained in the DOT. 20 C.F.R. § 404.1566; accord Bayliss, 427 F.3d at 1218 (ALJ may take administrative notice of reliable job information, including that from a VE, without additional foundation). Furthermore, the Commissioner may satisfy its burden by calling a VE to testify. "A VE's recognized expertise provides the necessary foundation for his or her testimony." Bayliss, 427 F.3d at 1218.

An ALJ must inquire whether the VE's testimony conflicts with information in the DOT. See SSR 00-4p; Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). I find that the ALJ complied with that requirement in this case when the ALJ inquired whether VE Paul

Morrison's testimony was consistent with the DOT. (Tr. 1418.) For the reasons set forth in <u>Werthy</u>, I conclude that the ALJ was not required to comment upon the letters submitted by plaintiff. 2011 WL 4625663 at *32.

As discussed above, I have concluded that the ALJ did not err in the fashioning of plaintiff's RFC. Because the hypothetical posed to the VE included all of those limitations which the ALJ deemed to be credible and consistent with the medical evidence, the ALJ could reasonably rely upon the VE's testimony. <u>Stubbs-Danielson</u>, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

<u>**CONCLUSION**</u>

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _26_ day of OCTOBER, 2011.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge